**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

KOREEN GRUBE, Individually and on
Behalf of All Others Similarly Situated,                    Case No. _____

               Plaintiff,

v.

CERTAINTEED CORPORATION,

               Defendant.

## CLASS ACTION COMPLAINT

Plaintiff, Koreen Grube ("Plaintiff" or "Grube"), individually and on behalf of all others

similarly situated, brings this action against Defendant, CertainTeed Corporation ("Defendant"

or "CertainTeed").  The following allegations are based on personal knowledge as to Plaintiff's

own conduct and are made on information and belief as to the acts of others:

### <u>NATURE OF THE ACTION</u>

1.     Plaintiff brings this nationwide consumer class action against CertainTeed on

behalf of all persons and entities who purchased CertainTeed WeatherBoards FiberCement

exterior siding products (the "Siding") manufactured by CertainTeed from 2002 to the present.

2.     This lawsuit arises out of damages sustained by Plaintiff and the class (defined

below) that were proximately caused by CertainTeed's defective Siding used in the construction

of Plaintiff's and class members' homes and other structures, or that was otherwise installed on

the homes and structures of Plaintiff and the class.

3.     At all times material hereto, CertainTeed manufactured and marketed the

defective Siding, and such products have been marketed, represented and warranted by

CertainTeed to be durable, long-lasting, and appropriate for use on the homes and other structures of Plaintiff and the class.

**A.  Background**

4.  Prior to 2002, CertainTeed designed, manufactured, and distributed siding using grain and silica as core substrate materials.  Upon information and belief, CertainTeed changed its design and/or formula in or around 2002 and began to use fly ash instead of grain and silica in its Siding.  Fly ash is an industrial by-product of coal- burning power plants and costs less than cement, so its use by CertainTeed lowered the cost of concrete utilized in the manufacture of the Siding.  However, the defective change in design and/or formulation resulted in water absorption, porository problems, and other uniform defects alleged herein -- none of which were inherent in the grain and silica sand design formulations.

5.  CertainTeed markets and warrants its Siding as durable, and offering long-lasting protection for a specified life of 50 years.[1]

6.  CertainTeed's sales brochures and marketing literature regarding the Siding, which were widely distributed to building professionals who installed the Siding and generally available to Plaintiff and the class at the time of sale, state, among other things, that the Siding "is engineered for decades of superior protection, wear and durability and is backed with a century-long tradition of excellence and customer satisfaction" (Exhibit A), and "When we say CertainTeed, we mean quality made certain, satisfaction guaranteed."  (Exhibit B (emphasis in original).)  CertainTeed further represents that its Siding "LASTS LONGER" and "OUTPERFORMS THE OTHERS."  (Exhibit C.)  Specifically, CertainTeed claims that its Siding has superior freeze/thaw protection, protects against damaging moisture, and resists

---

[1] The industry and consumers appropriately rely on the warranty and marketing nomenclature to mean that a product with a 50-year warranty is expected to have a usable lifetime of 50 years.

everyday bumps and harmful impacts. (Exhibits D, E.)

7. CertainTeed represented to Plaintiff and the class in documents generally available to the public that its Siding would last for 50 years without problems, or CertainTeed would remedy the problem. CertainTeed made this representation before purchase and at the time of purchase via sales brochures and marketing materials described herein.

8. Upon information and belief, CertainTeed learned that its new Siding was defective, absorbed water, could warp, crack, and cause other problems.

9. The Siding manufactured by CertainTeed is defectively designed and manufactured; it prematurely fails and causes damage to the underlying structures and other property of Plaintiff and the class; and it lowers the value of property.

10. The defects in CertainTeed Siding are so severe that Plaintiff and members of the class must repair or replace their Siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased CertainTeed's Siding product.

11. All of CertainTeed's Siding is uniformly defective such that Plaintiff's and class members' Siding is failing before the time periods advertised, marketed, and guaranteed by CertainTeed or otherwise expected by ordinary consumers purchasing Siding.

12. CertainTeed knew or reasonably should have known the Siding is defective. The Siding cracks, warps, discolors, and shrinks and is neither durable nor suitable for use as a building product.

13. CertainTeed's Siding has not lived up to CertainTeed's representations and, given the early and severe deterioration that requires unexpected maintenance and premature wear and replacement, has not proven to be of value when compared to other siding products.

3

## PARTIES

### A. Koreen Grube

14. Plaintiff resides at 6905 Mount Pleasant Drive, West Bend, Wisconsin.

15. Grube built her home in 2007 using CertainTeed Siding. In 2009, the Siding began to warp, crack, and deteriorate.

16. Not too long after Grube noticed the compromised Siding in 2009, she called the installation company. A representative from the company inspected her home, and then gave her a bid to caulk all of the cracked Siding.

17. Instead of paying the installation company to caulk the cracked and warped Siding, Grube initiated a complaint with CertainTeed in May 2010. (Composite Exhibit F.)

18. Grube filled out an "FIC Complaint Questionnaire" she received from CertainTeed and enclosed an invoice and photos of her home showing some of the 40 cracks that had appeared in her Siding. (Exhibit G.)

19. CertainTeed inspected Grube's property in June 2010 and was unable to determine the cause of the cracking and warping in the Siding. (Composite Exhibit F.)

20. CertainTeed stated that because Grube's Siding was no longer covered by the two-year "SureStart Protection," her warranty would only cover the cost of materials on a prorated basis. (Composite Exhibit F.) The CertainTeed warranty does *not* cover the costs of labor for the installation of replacement Siding.

21. CertainTeed offered to provide Grube with 429 pieces of Siding to replace the "affected walls" of her home (labor not included) because, "[w]hile the problem of cracks in the siding you are experiencing has not been determined, we do value our customers." (Composite Exhibit F.)

4

22.     While CertainTeed is offering to provide Grube with materials to replace the damaged, warped, and cracked Siding at "no cost," the estimated labor cost is nearly $7,000. (Exhibit H.)

**B.     CertainTeed Corporation**

23.     Defendant is a Pennsylvania corporation with its principal place of business located at 750 E. Swedesford Road, Valley Forge, Pennsylvania 19482. CertainTeed is a major North American manufacturer of building materials, including roofing, siding, insulation, windows and patio doors, fences, decking, railing, foundations and pipe. CertainTeed and its affiliates have more than 7,000 employees and more than 70 manufacturing facilities throughout the United States and Canada. CertainTeed is a subsidiary of Saint-Gobain, a multinational building products company with subsidiaries in 57 countries and more that 206,000 employees, including 22,000 in North America. CertainTeed manufactures, distributes and sells CertainTeed exterior Siding nationwide.

## JURISDICTION AND VENUE

24.     Defendant is headquartered in Montgomery County, Pennsylvania, but conducts substantial business in this District, including the sale and distribution of the Siding in this District. Defendant has intentionally availed itself of the laws and markets of Wisconsin.


25.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). Plaintiff is a citizen of Wisconsin and Defendant is a citizen of Pennsylvania. Moreover, a vast majority of class members are citizens of a state different from the home state of Defendant, and, upon information and belief, the amount in controversy exceeds Five Million Dollars ($5,000,000.00).

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

part of the events giving rise to this claim occurred in this District, and the property on which the defective Siding was installed is located in this District.

## SUBSTANTIVE ALLEGATIONS

**A.     CertainTeed Breached Its Warranties With Plaintiff and the Class**

27.     CertainTeed markets and affirmatively represents that its Siding is "the best-looking, finest-performing product of its kind" and "the finest cement siding you can buy." CertainTeed's marketing materials tout that its Siding is "engineered for decades of superior protection, wear and durability," has "superior durability" and has a "higher interlaminate bond strength," meaning that it has "superior freeze/thaw protection."  The materials also state that the Siding "will not rot."  (Exhibit C.)

28.     These bold and definitive statements directly contradict the experience of Plaintiff and the class, and amount to substantial misrepresentations of material facts.

29.     CertainTeed provides a limited 50-year warranty (Exhibit I) that its product will be "free from manufacturing defects."  The warranty states that "Certain Teed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding determined to be defective during the 50-year period following its installation" subject to a yearly 2% proration after two years.

30.     CertainTeed also provides a two-year warranty called "SureStart Protection." This warranty feature provides:

> Under this warranty feature, CertainTeed will pay to repair or replace, at its option, any WeatherBoards FiberCement Siding proven to be defective during the two-year SureStart Protection period. . . .

> CertainTeed's maximum liability under SureStart Protection will be equal to the reasonable cost to repair or replace the defective material at current value, including labor in connection with removal, repair or installation of either the original or replacement WeatherBoards FiberCement Siding.

6

(Exhibit I.)

31.     Plaintiff's damages far exceed the amounts that CertainTeed has agreed to pay pursuant to its express 50-year warranty.  The Siding on Grube's home has failed and will continue to fail.  Grube has experienced gapping, warping, cracking, paint chipping, loose nails and Siding pulling away from her home.  The labor costs of removing the existing defective product and installing new Siding are substantial.  The costs of installation are compounded by other necessary expenses such as nails and new house wrap.  In addition, there are costs associated with coating and painting the new Siding after installation.  CertainTeed's warranty offer to pay for new CertainTeed Siding material is woefully inadequate.

32.     As a direct and proximate result of purchasing CertainTeed's defective Siding, Plaintiff continues to suffer damages in the form of diminution in value of her home.  These damages are ongoing as long as CertainTeed's defective Siding remains on her home.

33.     The damages suffered by Plaintiff were wholly foreseeable by CertainTeed.  The manufacturing, production, marketing, distribution and sales of its defective product were and are in the complete control of CertainTeed.  CertainTeed has received and continues to receive numerous complaints and claims from homeowners, property owners, developers and installers regarding the failure of Certain Teed Siding and, thus, CertainTeed knew, or should have known, that its product was, and is, defective.

34.     Plaintiff justifiably relied on CertainTeed's claims of strength, durability and long-term quality performance of its product, and consequently, has suffered damages.

35.     CertainTeed has failed to take any steps to notify Plaintiff and class members on a class-wide basis of the defects in its Siding product and continues to benefit from the sales of its defective product nationwide.

36.     CertainTeed has failed to take steps to adequately compensate Plaintiff and the class and make them whole for the damages they have suffered, and continue to suffer, resulting from the purchase of the defective Siding.

**B.     CertainTeed's Acts and Omissions Have Damaged Plaintiff and the Class**

37.     Upon information and belief, CertainTeed has received thousands of warranty claims alleging a manufacturing design defect in the Siding.  Upon information and belief, some of these warranty claims have been improperly rejected and other warranty claims have been settled in a manner not consistent with the warranty terms.

38.     Despite receiving many complaints from consumers, CertainTeed has refused to convey effective notice to consumers about the defects, and has refused to fully repair damage caused by the premature failure of its product.

39.     As a result of the defects and failures alleged herein, Plaintiff and the class have suffered actual damages.  The Siding on their homes and other structures will continue to prematurely fail, requiring Plaintiff and members of the class to expend thousands of dollars to repair the damage caused by the defective Siding.

40.     Upon information and belief, CertainTeed has engaged in a uniform practice of denying warranty claims through a system of obfuscating form letters that misrepresent the defective nature of CertainTeed Siding.

41.     At all relevant times, CertainTeed had a duty to disclose to Plaintiff and the class that the Siding was, and is, defective, prone to foreseeable and uniform problems, and otherwise was inherently flawed in its design such that the Siding was, and is, not suitable for use as an exterior building material.

42.     The relatively small size of the typical class member's claims, and because most

8

homeowners and/or property owners have only modest resources, make it unlikely that individual class members could afford to seek a full and fair recovery against CertainTeed on their own. This is especially true in light of the size and resources of CertainTeed and its parent corporation.

**C.    The Statute of Limitations Should be Equitably Tolled**

43.    The statutes of limitations applicable to Plaintiff's and the class members' claims should be equitably tolled.

44.    Plaintiff and the Class had no knowledge of, and no way of discovering the defects latent in CertainTeed's Siding at the time they purchased the product and it was installed on their homes and structures.

45.    Because the defects in the Siding are latent and not discoverable until the Siding fails, Plaintiff and the class members were not reasonably able to discover their Siding was defective until after its installation.

46.    CertainTeed did not notify, inform or disclose to Plaintiff and the class that there were defects in the Siding products.

47.    Plaintiff acted immediately upon noticing the product failing by notifying CertainTeed and participating fully in Defendant's warranty claim process.

48.    CertainTeed representatives affirmatively misrepresented to Plaintiff and class members that the damages they observed were the result of normal wear and tear on the product. (*See* Composite Exhibit F, "In regards [sic] to the cracks concern, understand that CertainTeed fiber cement Siding is a durable product but it is far from indestructible. If the material is subjected to a significant amount of impact, damage or stress, the boards can crack.".) Statements such as these constitute an active effort to conceal and misrepresent the true causes of

the damage and hide the fact that the product is defective.

49.     Because CertainTeed failed in its duty to notify Plaintiff and class members that its product was defective and actively attempted to conceal this fact, the statute of limitations should be tolled on Plaintiff's claims.

## CLASS ACTION ALLEGATIONS

50.     This action is brought and is properly maintained as a nationwide class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), on behalf of Plaintiff and a class of similarly situated individuals and entities defined as follows:

> All individual and entities that own, have owned, or acquired homes, residences, buildings, or other structures physically located in the United States on which CertainTeed WeatherBoards FiberCement Siding has been installed since 2002 ("the Nationwide Class").  Excluded from the Nationwide Class are the Defendant, any entity in which the Defendant has a controlling interest, and Defendant's legal representatives, assigns, and successors.

51.     Plaintiff also seeks to represent a Sub-Class defined as follows:

> All individual and entities that own, have owned, or acquired homes, residences, buildings, or other structures physically located in Wisconsin on which CertainTeed WeatherBoards FiberCement Siding has been installed since 2002 ("the Sub-Class").  Excluded from the Sub-Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, assigns, and successors.

52.     Plaintiff reserves the right to re-define or create sub-classes prior to certification.

53.     The Class and Sub-Class (collectively, the "Class") is so numerous that individual joinder is impracticable.  The actual number of Class members is unknown at this time, but on information and belief, will likely number in the thousands.  The actual number of Class members can be determined through records in the possession of Defendant.

54.     Numerous questions of law and fact common to Plaintiff and the Class

predominate over any questions that may affect individual Class members, including, but not limited to:

a.      Whether CertainTeed's Siding is defective;

b.      Whether the Siding is subject to shrinking, warping, gapping, cracking, paint chipping, delaminating, and separating from structures and is not suitable for use as an exterior siding product;

c.      Whether CertainTeed knew or should have known of the defective nature of its Siding before putting it into the stream of commerce for purchase by Plaintiff and the Class;

d.      Whether CertainTeed owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, production, testing, design, manufacture, warranting and marketing of its Siding;

e.      Whether CertainTeed breached its duty to Plaintiff and the Class by designing, manufacturing, producing, marketing, advertising and selling defective Siding to Plaintiff and the Class;

f.      Whether CertainTeed breached its duty to Plaintiff and the Class to promptly remove the defective Siding from the marketplace or take other appropriate remedial action;

g.      Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

h.      Whether CertainTeed's Siding fails to perform as advertised, marketed and warranted;

i.      Whether CertainTeed breached its express warranties to Plaintiff and the Class by advertising, marketing and selling defective Siding to Plaintiff and the Class and refusing to cover the full costs associated with replacing the defective Siding;

j.      Whether CertainTeed breached its implied warranties to Plaintiff and the Class by advertising, marketing and selling Siding that was not of a merchantable quality, nor fit for the ordinary purpose for which it was sold, and refusing to cover the full costs associated with replacing the defective Siding; and

k.      Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of the costs of removal and replacement of the defective Siding, and for damages resulting from the diminution of value of Class

members' homes and other structures.

55. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff, like all Class members, had defective CertainTeed Siding installed on her home and has experienced product failure resulting from those defects. The effects seen by Plaintiff when her Siding failed are similar to the effects seen by other Class members across the country. Plaintiff and all Class members suffer damages in the form of the costs associated with replacing the defective Siding and diminution in the value of their homes.

56. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained experienced counsel with the expertise and resources to prosecute a nationwide consumer class action and Plaintiff understands her responsibilities as a Class representative. Plaintiff and her counsel do not foresee any circumstances in which the interests of Plaintiff would be adverse to the interests of the Class.

57. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. It would be economically impractical for Plaintiff and Class members to pursue individual actions against CertainTeed, as the costs of prosecution would likely surpass their individual damages. Thus, Plaintiff and Class members would be left with no effective remedy for the damages they have suffered and continue to suffer. Class treatment of Plaintiff's claims will permit Plaintiff and the Class to vindicate their rights against CertainTeed, and conserve the resources of the Court and the parties. Class treatment will also avoid the possibility of inconsistent outcomes that could result from a multitude of individual actions in varying jurisdictions nationwide.

## FIRST CAUSE OF ACTION
### Violations Of Magnuson-Moss Act
### 15 U.S.C. §§ 2301-2312 (Written Warranty)
### (Asserted On Behalf Of Plaintiff And The Nationwide Class)

58.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

59.     The Siding at issue constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

60.     Plaintiff and all Class members are each a "consumer" within the meaning of 15 U.S.C. § 2301(3).

61.     Defendant is and was a "warrantor" and "supplier" within the meaning of 15 U.S.C. §§ 2301(4) and (5).

62.     Defendant provided Plaintiff and all Class members with a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

63.     Defendant's written warranties to Plaintiff and all Class members were identical in all material respects.

64.     Defendant knew that the Siding at issue suffered from a serious defect and, nevertheless, continued to market and sell the Siding with its express written warranties.

65.     Defendant was obligated under the terms of its written warranties to replace the defective Siding sold to Plaintiff and the Class or to refund the amounts paid by Plaintiff and the Class.

66.     Defendant has breached the written warranties, as set forth above, by supplying the Siding in a condition that does not meet the warranty obligations undertaken by Defendant, and by failing to replace the defective products and/or refund the amounts paid for the Siding by Plaintiff and the Class.

Case 2:11-cv-00396-RTR    Filed 04/25/11    Page 13 of 25    Document 1

67.     As set forth above, the warranty fails in its essential purpose and, accordingly, Plaintiff and members of the Class cannot and should not be limited to the remedies set forth in the written warranty and, instead, should be permitted to recover other appropriate relief, including all compensatory damages and injunctive relief.

68.     Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Defendant's knowledge of the defect in the Siding at issue, Defendant has failed and refused to honor the warranty, even though it knows that the Siding is inherently defective.

69.     Defendant has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Siding.

70.     Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to the warranty, and Defendant has failed to do so.

71.     The written warranty fails in its essential purpose because Defendant has not had and does not have the intention of honoring its warranty obligations -- and, as a result, the remedy that Defendant has offered to provide to Plaintiff and the Class was effectively illusory (and fails in its essential purpose) because, in essence, it provides no remedy at all.

72.     Defendant breached the written warranty to Plaintiff and all members of the Class since the Siding is inherently defective and substantially likely to fail during its useful life (*i.e.*, the term of the written warranty).

73.     The regulations of the Federal Trade Commission ("FTC") specifically provide as follows with respect to a product that is warranted:  "A seller or manufacturer should advertise that a product is warranted or guaranteed only if the seller or manufacturer, as the case may be,

promptly and fully performs its obligations under the warranty or guarantee." 16 C.F.R. § 239.5 (emphasis added).

74.     Here, by warranting or guaranteeing a product for which it was unable to promptly and fully perform its obligations under the warranty or guarantee, Defendant engaged in false, deceptive and misleading advertising, marketing and representations in violation of the FTC's regulations and guidance.

75.     By Defendant's conduct as described herein, including Defendant's knowledge of the Siding and its actions, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written promises, warranties and representations.

76.     As a result of Defendant's breach of express or written warranties, Plaintiff and the members of the Class are entitled to revoke their acceptance of the defective Siding, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

### SECOND CAUSE OF ACTION
**Violations Of Magnuson-Moss Act**
**15 U.S.C. §§ 2301-2312 (Implied Warranty)**
**(Asserted On Behalf Of Plaintiff And The Nationwide Class)**

77.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

78.     The Siding constitutes a "consumer product" as that term is defined by 15 U.S.C. § 2301(1).

79.     Plaintiff and Class members are each a "consumer" as that term is defined by 15 U.S.C. § 2301(3).

80.     CertainTeed is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

81. CertainTeed provided Plaintiff and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

82. All jurisdictional prerequisites, including pre-suit notice, have been satisfied herein.

83. By CertainTeed's conduct as described herein, including CertainTeed's actual knowledge or reckless unawareness of the defects in the Siding, and its action, and inaction, in the face of that knowledge or reckless unawareness, CertainTeed has failed to comply with its obligations under its written and implied promises, warranties, and representations.

84. Given CertainTeed's knowledge or reckless unawareness of the defect and the inadequacy of the remedy provided in the written warranty, the warranty is unconscionable, fails of its essential purpose, is a sham, and deprived Plaintiff and members of the Class of a substantial benefit of their bargain with CertainTeed.

85. Any contractual language in CertainTeed's published warranties that attempts to disclaim implied warranties or limit remedies is unconscionable, causes the warranties to fail of their essential purpose, fails to conform to the requirements for limiting warranties on remedies under applicable law, and is void and unenforceable.

86. Plaintiff and members of the Class are in privity with CertainTeed in that they purchased their Siding directly from CertainTeed, or from an actual or apparent agent of CertainTeed, such as CertainTeed's authorized dealers.

87. Plaintiff and members of the Class are also in privity with CertainTeed by virtue of the contractual relationship stemming from CertainTeed's manufacturer's warranty provided in conjunction with the purchase of the Siding, which is enforceable by Plaintiff and the Class against CertainTeed regardless of where, or from whom, the Siding was acquired.

16

88. The defective Siding directly and proximately caused the injuries Plaintiff and Class members have sustained, including damages in an amount to be determined at trial.

89. Plaintiff and members of the Class have satisfied all of their obligations under their warranty, or have otherwise been excused from such obligations as a result of Defendant's conduct described herein.

90. As a result of CertainTeed's breach of implied warranties, Plaintiff and members of the Class are entitled to revoke their acceptance of the Siding, obtain damages and equitable relief, and obtain attorneys' fees and costs under 15 U.S.C. § 2310.

### THIRD CAUSE OF ACTION
**Breach Of Express Warranty**
**(Asserted On Behalf Of Plaintiff And The Sub-Class)**

91. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

92. CertainTeed marketed and sold its Siding in the stream of commerce with the intent that it would be purchased by Plaintiff and Sub-Class members.

93. Through its written warranties, brochures, and marketing materials regarding the durability and quality of the Siding, CertainTeed created express warranties which became part of the basis of the bargain with Plaintiff and members of the Sub-Class.

94. CertainTeed expressly warranted that its Siding was well-suited as an outdoor siding material for a period of at least 50 years.

95. Express warranties created by CertainTeed go beyond the limited warranties CertainTeed relies upon.

96. In fact, CertainTeed's Siding began manifesting defects and failing after only a couple years' use and, in some instances, even a shorter timeframe.

Case 2:11-cv-00396-RTR   Filed 04/25/11   Page 17 of 25   Document 1

97.     Plaintiff and Sub-Class members have experienced shrinking, warping, gapping, cracking, chipping, loosening nails, delaminating, and separating from structures. These effects have been experienced by Sub-Class members in multiple states and localities. They are the result of CertainTeed's defective Siding and are not the result of improper installation, failure of other structural components, or misuse.

98.     Defendant breached its express warranty to provide Plaintiff and Sub-Class members Siding free of manufacturing defects.

99.     Under the "SureStart Protection" feature of CertainTeed's warranty, the company will cover the costs of labor to remove and replace defective Siding for a period of two years after purchase. This level of coverage is wholly inadequate to protect or make whole Plaintiff, who is now outside the two-year warranty period, although the defective nature of the Siding she purchased was known by Defendant while the Siding was being marketed and sold by CertainTeed. The warranty also fails to compensate Plaintiff for the damage to her home caused by the defective Siding, and does not compensate for the diminution in value of Plaintiff's and Sub-Class members' homes and structures. The limitations on remedies and the exclusions in CertainTeed's warranties are unconscionable and unenforceable.

100.     Plaintiff and the Sub-Class have suffered damages by CertainTeed's breach of its express promise and warranty by purchasing and installing CertainTeed's defective Siding on their homes and structures. These defects have required Plaintiff and Sub-Class members to expend resources to repair and maintain the failing Siding and address other damages to their homes proximately caused by CertainTeed's defective Siding. Plaintiff and Sub-Class members also suffer continued diminution in the value of their homes and structures.

101.     CertainTeed intentionally marketed its warranty to induce Plaintiff and Sub-Class

members to purchase CertainTeed Siding by providing a false sense of security and protection in their investment. CertainTeed continued to engage in this activity, even after being put on notice that its product was defective.

102. CertainTeed has denied or failed to pay in full the warranty claims or has not responded to warranty claims.

103. As a result of CertainTeed's breach of its express warranties, Plaintiff and the Sub-Class have suffered actual damages in that they purchased and installed on their homes and other structures an exterior siding product that is defective and that has failed or is failing prematurely. This failure has required or is requiring Plaintiff and the Sub-Class to incur significant expense in repairing or replacing their Siding. Replacement is required to prevent ongoing and future damages to the underlying structures and interiors of Plaintiff's and Sub-Class members' homes and structures.

104. Plaintiff, on behalf of herself and all others similarly situated, demands judgment against CertainTeed for compensatory damages for herself and each member of the Sub-Class, for the establishment of a common fund, plus attorneys' fees, interest, and costs.

### FOURTH CAUSE OF ACTION
**Breach Of Implied Warranties**
**(Asserted On Behalf Of Plaintiff And The Sub-Class)**

105. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

106. CertainTeed manufactured and sold its Siding to Plaintiff and the Sub-Class, and, in so doing, impliedly warranted to them that the product was of merchantable quality and fit for the use for which it was intended.

107. CertainTeed's Siding was, in fact, not of merchantable quality and was not fit for

its intended use.

108. As described herein, CertainTeed's defective Siding failed in numerous ways. These failures make the Siding unfit and inappropriate for its intended use as a covering for building exteriors.

109. The product was also unfit for its particular purpose. CertainTeed manufactured its Siding in a climate with multiple seasons (including cold weather seasons). CertainTeed knew, or should have known, that its Siding would be subjected to sub-zero temperatures, snow, sleet, and freeze-thaw cycles for a substantial period of each year.

110. After Plaintiff was made aware of the cracking and warping her Siding sustained, she gave notice to CertainTeed.

111. CertainTeed failed to provide an adequate remedy and added additional terms to the warranties.

112. As a result, CertainTeed breached its implied warranties to Plaintiff and Sub-Class members by producing, manufacturing, marketing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

113. Plaintiff and Sub-Class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

114. Plaintiff, on behalf of herself and all others similarly situated, demands judgment against CertainTeed for compensatory damages for herself and each member of the Sub-Class, the establishment of a common fund, plus attorneys' fees, interest, and costs.

**FIFTH CAUSE OF ACTION**
**Violation Of Wis Stat. § 100.18**
**(Asserted On Behalf Of Plaintiff And The Sub-Class)**

115.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

116.    CertainTeed is a manufacturer, marketer, seller, and distributor of siding.

117.    The conduct described above and throughout this Complaint took place within the State of Wisconsin and includes misrepresentations, deceptive and misleading statements made in violation of Wis. Stat. § 100.18.

118.    The claims of all Sub-Class members are governed by Wis. Stat. § 100.18 because CertainTeed's misrepresentations, deceptive and misleading statements were made to Plaintiff and Sub-Class members in Wisconsin.

119.    Plaintiff and Sub-Class members purchased CertainTeed Siding for installation on homes and other structures located in Wisconsin.

120.    CertainTeed made false, deceptive and misleading statements to Plaintiff and members of the Sub-Class with the intent of selling and increasing the consumption of the Siding, including false, deceptive and misleading statements concerning the quality, uses, characteristics, and benefits of CertainTeed Siding.

121.    CertainTeed made the false, deceptive and misleading statements concerning the Siding despite knowing or having reason to know that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and was otherwise not as warranted and represented by CertainTeed.

122.    CertainTeed's false, deceptive and misleading statements caused Plaintiff and Sub-Class members to be deceived and to sustain pecuniary damages, including but not limited

21

to the amounts paid for the Siding, the costs incurred to repair or replace the Siding, and the loss in the value of their properties given the installation of the Siding.

123.    Had Plaintiff and the Sub-Class known the Siding was defective and would fail prematurely, they would not have purchased the Siding, or they would have negotiated additional coverage.  The fact that the Siding prematurely fails is a material fact that any reasonable customer would have considered important in deciding whether to purchase the Siding.

124.    CertainTeed's violation of Wis. Stat. § 100.18 is continuing, with no indication that CertainTeed will cease.

125.    As a direct and proximate result of CertainTeed's violations of Wis. Stat. § 100.18, Plaintiff and Sub-Class members have suffered and will continue to suffer ascertainable damages and are entitled to all appropriate relief, including but not limited to damages, costs, and attorneys' fees.

<h3 style="text-align:center">SIXTH CAUSE OF ACTION</h3>
<strong>Negligence</strong><br><strong>(Asserted On Behalf Of Plaintiff And The Sub-Class)</strong>

126.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

127.    Defendant had a duty to Plaintiff and the Sub-Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacturing, production, marketing and distribution of its Siding.

128.    Defendant breached its duty by producing and selling a defective product to Plaintiff and the Sub-Class.  As described herein, CertainTeed's defective Siding has failed in numerous ways, including shrinking, warping, gapping, cracking, chipping, delaminating, and separating from structures.

129. CertainTeed further breached its duty by failing to notify Plaintiff and the Sub-Class of the defects in the Siding they were purchasing, and by failing to take any remedial action once it was on notice that its product was defective.

130. CertainTeed has complete control over its manufacturing, testing, production, and distribution facilities and knew or should have known that its Siding was defective.

131. It was also completely foreseeable to CertainTeed that Plaintiff and the Sub-Class would rely upon CertainTeed's marketing claims of long-term durability and a supposedly inclusive warranty to purchase CertainTeed Siding.

132. CertainTeed's negligence was the proximate cause of the damages suffered by Plaintiff and the Sub-Class in the form of purchasing defective Siding, installing the Siding, repairing the Siding, repairing damages caused by the Siding, and addressing the costs of removing and replacing the Siding. Plaintiff and the Sub-Class also continue to suffer damages in the form of ongoing diminution in the value of their homes and structures as a direct result of having defective CertainTeed Siding on their exteriors.

### SEVENTH CAUSE OF ACTION
**Unjust Enrichment**
**(Asserted On Behalf Of Plaintiff And The Sub-Class)**

133. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

134. This claim is asserted in the alternative on behalf of Plaintiff and the members of the Sub-Class, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

135. Substantial benefits have been conferred on CertainTeed by Plaintiff and the Sub-Class by purchasing CertainTeed Siding, and CertainTeed knowingly and willingly accepted and

enjoyed those benefits.

136.    CertainTeed knew or should have known that the payment received from Plaintiff and the Sub-Class members for Siding was paid with the expectation that the Siding would perform as represented.

137.    CertainTeed's retention of these benefits is inequitable.

138.    Plaintiff and the Sub-Class members are entitled to recover from CertainTeed all amounts wrongfully collected and improperly retained by CertainTeed, plus interest.

139.    As a direct and proximate cause of CertainTeed's wrongful conduct and unjust enrichment, Plaintiff and the Sub-Class members are entitled to an accounting, restitution, attorneys' fees, costs, and interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief, individually and on behalf of all others similarly situated:

a.    an Order certifying the Class and Sub-Class, appointing Plaintiff as the Class Representative, and appointing the undersigned counsel as Class Counsel;

b.    an award of equitable and injunctive relief enjoining Defendant from pursuing the policies, acts and practices described in this Complaint;

c.    an award of damages and enhanced damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

d.    an award of pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.    an award of reasonable attorneys' fees and reimbursement of costs incurred by Plaintiff and her counsel in connection with this action; and

f.     such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims set forth above.

Dated this 25th day of April, 2011

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

_____s/Douglas P. Dehler_____
Douglas P. Dehler (S.B.N.1000732)
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
111 East Wisconsin Avenue, Suite 1750
Milwaukee, Wisconsin 53202
Telephone: (414) 226-9900
Facsimile: (414) 226-9905
Email: ddehler@sfmslaw.com

Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
35 E. State Street
Media, PA  19063
Tel: (610) 891-9880
Fax: (610) 891-8993
Email:  nfinkelman@sfmslaw.com

Edward A. Wallace
Amy E. Keller
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
Email: eaw@wexlerwallace.com
Email: aek@wexlerwallace.com

*Counsel for Plaintiff and the Putative Class*

25